IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON LAMBOY, | No. C 11-3357 SI |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| STATE OF CALIFORNIA, *et al*., | |
| Defendants.           / | |

On October 12, 2012, the Court heard argument on defendants' motion for summary judgment. Having carefully considered the arguments of counsel and the papers submitted, the motion is GRANTED IN PART and DENIED IN PART, for the reasons set forth below.

**BACKGROUND**

In his First Amended Complaint, plaintiff Jason Lamboy alleges that he suffered ethnic discrimination and illegal workplace retaliation in violation of Title VII of the 1964 Civil Rights Act. Plaintiff Lamboy, a Hispanic male, began working for defendant California Department of Corrections & Rehabilitation ("CDCR") in 2002 as a correctional officer at San Quentin. He contends that beginning in 2008, he received four "Adverse Actions" (employee disciplinary actions) based on four discrete incidents at the CDCR. Additionally, he was transferred in October 2007 to a different unit; he was denied a promotion in July 2008; he was removed as an instructor from Crisis Response Training; his colleagues spread negative rumors about him; and material was not timely purged from his personnel file. The facts surrounding each of these contentions are summarized below.

**1.  Adverse Action for Time Sheet Falsification**

The first Adverse Action at issue was for allegedly stealing overtime hours, falsifying a Fair Labor Standards Act ("FLSA") timesheet, and being dishonest in a subsequent interview. Plaintiff's Declaration in Support of His Opposition to Defendants' Motion for Summary Judgment ("Lamboy Decl.") ¶ 7.

On February 16, 2007, Lamboy told his supervisor, Martin Kis, that he had worked 1.5 hours of overtime. *Id.* Kis told Lamboy that Kis would not authorize the overtime, and instructed Lamboy to remove his name from the FLSA timesheet. *Id.* Kis and another officer involved in the incident, Sergeant Barzelay, are both white. *Id.* at ¶ 9. Lamboy did not remove his name from the timesheet, and he later took the timesheet home with him. See excerpts of deposition of Jason Lamboy ("Lamboy Depo"), attached as Exhibit A to Declaration of Jennifer G. Perkell in Support of Defendant's Motion for Summary Judgment, and deposition exhibits, attached as Exhibit B to Perkell Declaration; Exh. 19.

In an interview about the incident with the Office of Internal Affairs ("OIA"), Lamboy initially told OIA that he had left the FLSA timesheet in the Watch Office where it belonged. *Id.* Later he admitted to taking it home, and not returning it until the following day. *Id.* Lamboy does not dispute that he did not remove his name from the FLSA timesheet as instructed or that he made those statements to the OIA; instead, he alleges that he was entitled to the overtime and that his statements were not misleading. Lamboy Decl. ¶ 7.

On March 11, 2008, Lamboy was served with a Notice of Adverse Action for the timesheet falsification incident. *Id.* at ¶ 8; Lamboy Depo, Exh. 19. The proposed discipline was termination. Lamboy Depo, Exh. 19. After settlement negotiations, where Lamboy was represented by an attorney, Lamboy agreed to withdraw his appeal of the Adverse Action in return for a salary reduction of 10% for 12 months. Lamboy Decl., Exh. 3; CDCR Request for Judicial Notice in Support of Motion for Summary Judgment ("CDCR Req."), Exh. C. Lamboy asserts that he signed the settlement agreement under duress because he was threatened with termination. Lamboy Decl. ¶ 8.

**2.  Adverse Action for Misuse of Family Crisis Leave**

The second Adverse Action at issue was for alleged failure to properly follow the Family Crisis

2

Leave policy. *Id.* at ¶ 10. Lamboy used CDCR Family Crisis Leave on June 2 and June 5, 2007 to care for his children because his wife required medical attention. *Id.* Lamboy received prior authorization for leave from the Watch Commander on June 2, but not on June 5. *Id.*, Exh. 6. If an employee does not have prior authorization for Family Crisis Leave, he must provide substantiation of his need for leave to the Custody Captain upon his return. *Id.*, Exh. 5. On June 26, Lamboy's supervisor, Captain Robert Fox, requested an investigation into Lamboy's violation of the Family Crisis Leave policy because he failed to submit a written substantiation of the need for the leave to the Custody Captain upon his return. On June 19, Fox and Custody Captain Facio met with Lamboy, but he still did not provide substantiation of his need for leave. *Id.*

Prior to this incident, in January 2007, Lamboy had told Fox that he was from Chino, California. Fox then replied that Lamboy was the "only Hispanic that he had seen from Chino that hadn't been locked up." *Id.* at ¶ 5.

On June 29, 2008, Lamboy was served with a Notice of Adverse Action for alleged failure to properly follow the Family Crisis Leave policy. *Id.* at ¶ 12. The proposed discipline was a salary reduction of 10% for 12 months. *Id.* The discipline was upheld during a hearing, but Lamboy and CDCR settled during his appeal. *Id.* The settlement provided that the discipline would be reduced to a letter of reprimand and the material would be removed from Lamboy's personnel file, in return for a release of all claims. CDCR Req., Exh. E. Lamboy contends the CDCR did not reimburse Lamboy for the salary reduction, and he believes that the materials were only removed from his file in June 2012. Lamboy Decl. ¶¶ 12, 22-23. The CDCR has only provided evidence that the materials were not in the file as of June 2012. Declaration of Susan Palmer in Support of Defendants' Motion for Summary Judgment ("Palmer Decl.") ¶ 2. At oral argument, counsel for CDCR represented that they only had proof of partial, but not full repayment.

### 3. Adverse Action for Use of Excessive Force

The third Adverse Action at issue was for alleged use of excessive force. *Id.* at ¶ 13. On June 27, 2007, an inmate sat on the floor and refused to get up on his feet. *Id.* After the inmate refused to move, Sergeant Dale Lee ordered Lamboy and another officer, Jacob Zipperlen, to pick the inmate up

3

by the shoulders and move him to West Block. Lamboy Depo, Exh. 25. Instead, Lamboy and Zipperlen dragged the inmate by the ankles approximately 25 to 30 feet. *Id.*

On September 1, 2008, Lamboy received a Notice of Adverse Action for use of excessive force. *Id.* The proposed discipline was a 5% salary reduction over the course of 12 months. *Id.* For the same incident, Lee received an Adverse Action with a proposed discipline of a 5% salary reduction for 6 months, and Zipperlen received a proposed 10% salary reduction for twelve months. Lamboy Decl. ¶ 15. In settlement agreements, Lee's punishment was reduced to a 5% salary reduction for 2 months, and Zipperlen received a letter of reprimand. *Id.* Lee and Zipperlen are both white. *Id.* Lamboy alleges that the CDCR never made him any settlement offers. *Id.* at ¶ 16. The CDCR contends that it did make multiple settlement overtures to Lamboy, including specifically offering to reduce his penalty to a 5% salary reduction over 6 months. Declaration of Timothy Rossetti in Support of Defendants' Motion for Summary Judgment ("Rossetti Decl.") ¶ 4.

### 4.     **Adverse Action for Failure to Comply with the Program Status Report**

The fourth Adverse Action at issue was for allegedly authorizing the release of inmate workers when such release was prohibited by a Program Status Report ("PSR"). *Id.* at ¶ 17. On January 4, 2010, after an inmate riot, a PSR had been issued which banned the use of inmate workers and required all inmates to remain in their cells. Lamboy Depo, Exh. 28. On that day, Lamboy was supervising a unit in San Quentin, and authorized two inmates to be released from their cells to assist the prison staff. Lamboy Decl. ¶ 17. As a result, an inmate and a staff member were attacked. Lamboy Depo, Exh. 28. Lamboy admitted that he had allowed the release of the inmates in violation of the PSR. *Id.*

Lamboy was served a Notice of Adverse Action on September 21, 2011. Lamboy Decl. ¶ 17. The proposed discipline was a 10% salary reduction for 18 months. *Id.* However, upon appeal the proceeding was dismissed because it was not served within a year of the incident, and Lamboy was fully reimbursed for his salary reductions. *Id.*

### 5.     **Job Change to a Different Unit**

In October 2007, Captain Fox announced that Lamboy and other officers were being transferred

4

out of the Adjustment Center to a different unit, calling them a "bunch of bad apples," and stating that a sergeant had "gone rogue." Lamboy Decl. ¶ 18. Including Lamboy, the transferees included three Hispanic officers, one Indian officer, one African-American officer, and two Caucasian officers. *Id.* The transfer did not cause a reduction in pay, benefits, or result in a demotion, but it changed Lamboy's scheduling. *Id.*; Lamboy Depo at 226. Fox stated that the officers were chosen because they had prior or pending Adverse Actions for use of excessive force, and the Adjustment Center was a very volatile unit. Declaration of R.W. Fox in Support of Defendant's Motion for Summary Judgment ("Fox Decl.") ¶¶ 8-9. Fox chose Sergeant Gerald Bickham, an African-American officer, as Lamboy's replacement. *Id.* at ¶ 10.

**6.     Denial of Promotion to Lieutenant in July 2008**

Plaintiff alleges that he was denied a promotion close to 20 times, but he does not allege any specific evidence of employment discrimination that caused these denials, with a single exception. Lamboy Decl. ¶ 19. In July 2008, Lamboy interviewed for a lieutenant's position with Fox and Associate Warden Cota. *Id.* Cota was one of the officers who had been at the hearing which resulted in affirmance of Lamboy's Adverse Action for the FLSA timesheet falsification. *Id.* Lamboy was denied the promotion. *Id.* Cota, who is Hispanic, wrote in his interview notes, "Writing exercise was not thorough as compared to the successful candidates. Responses were fair to minimal." Declaration of Andrew L. Cota in Support of Defendant's Motion for Summary Judgment ("Cota Decl.") ¶ 3, Exh. A.

**7.     Other Negative Acts**

Lamboy was removed from participating in a Crisis Response Team and related academy. Lamboy Decl. ¶ 20. He was advised that officers could not participate if they had an open investigation for use of excessive force. *Id.*

Lamboy alleges that Fox's comments caused his colleagues to spread rumors that he was "rogue" and a "bad apple." *Id.* at ¶ 21. He believes that this caused other officers to act hostilely towards him. *Id.*

5

Lamboy also alleges that he had to constantly request that his personnel file be purged of negative material. *Id.* at ¶ 22. Negative material that should have been removed continued to remain in his file until his transfer from San Quentin in 2008. *Id.*

**8.     EEOC Complaint**

In May 2008, Lamboy filled out a questionnaire for the EEOC in which he checked a box indicating that the basis for his employment discrimination claim was "retaliation." *Id.* at ¶ 24, Exh. 10. On the questionnaire he stated that he was being investigated in "retaliation for exercising [his] FLSA rights." *Id.* In June 2008, Lamboy filed a charge with the EEOC in which he checked "National Origin," but not retaliation, as the basis for his employment discrimination claim. *Id.* at ¶ 24, Exh. 11. Subsequently, Lamboy communicated both orally and in writing to the EEOC that the CDCR's adverse employment actions stemmed from both ethnic discrimination and retaliation. *Id.* at ¶ 25, Exh. 13. The EEOC never amended the charge to include retaliation, and sent Lamboy a right-to-sue notice based on his national origin claim on April 9, 2011. *Id.* at ¶¶ 24-26. The CDCR received the EEOC Notice of Charge of Discrimination for Jason Lamboy on May 14, 2008, and the Charge of Discrimination on June 20, 2008. Declaration of Manolo Olaso in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Olaso Decl."), Exhs. 18, 19.

**LEGAL STANDARD**

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *See T.W. Elec. Service, Inc. v. Pacific Elec.*

6

*Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49 (2d Cir. 1985); *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

The CDCR argues that Lamboy's retaliation suit is barred because he failed to exhaust his remedies for that claim. It also argues that several of Lamboy's ethnic discrimination claims are barred because of settlement agreements he entered into with the CDCR releasing his Title VII claims. Finally, the CDCR argues that there are no genuine issues of material fact that each of the adverse employment actions was undertaken for legitimate reasons and not because of discrimination or retaliation.

**1.     Jurisdictional Requirement of Title VII**

To satisfy federal subject matter jurisdiction for Title VII claims, a plaintiff must exhaust all administrative remedies on those claims before filing a lawsuit in federal court. *See* 42 U.S.C. § 2000e-5(f); *Sommatino v. United States*, 255 F.3d 704, 707 (9th Cir. 2001). However, the exhaustion requirement does not bar a plaintiff from seeking judicial relief for incidents or claims of discrimination not raised in the original EEOC charge, if the new incidents or claims are "'like or reasonably related' to the allegations in the EEOC charge, or [] fall within the 'EEOC investigation which can reasonably be expected to grow out the charge of discrimination.'" *Id.* at 708 (quoting *Deppe v. United Airlines*, 217 F.3d 1262, 1267 (9th Cir. 2000)). Courts must give EEOC charges a broad construction because they are often framed by those without technical knowledge required for formal pleading. *Kaplan v.*

7

*International Alliance of Theatrical and Stage Employees*, 525 F.2d 1354, 1359 (9th Cir. 1975); *Sosa v. Hiraoka*, 920 F.2d 1451, 1458 (1990). Courts have jurisdiction over all allegations of discrimination that either "fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination." *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1100 (9th Cir. 2002) (quoting *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir.1994)) (emphasis in the original).

The CDCR argues that Lamboy did not exhaust his retaliation claim because the EEOC complaint and investigation focused on the ethnic discrimination claim, rather than the retaliation claims. However, the retaliation claims fell within the scope of the actual investigation because they involved many of the same or similar incidents. Indeed, not only would the EEOC be expected to learn of the retaliation claim, but Lamboy informed the EEOC of the instances of alleged retaliation during the course of its investigation.

The CDCR argues Lamboy cannot logically claim that his EEOC complaint of retaliation, through which he exhausted his administrative remedies, also served as the protected activity in his retaliation claim. However, it appears that when Lamboy initially filled out his EEOC questionnaire, he believed that the CDCR was retaliating against him for appealing his FLSA timesheet Adverse Action. It was only later that Lamboy began to allege retaliation for the filing of his EEOC complaint and this subsequent suit. The facts of both could have reasonably have been discovered in an EEOC investigation.

Thus, the Court finds that it has subject matter jurisdiction over the employment discrimination based on both ethnic discrimination and retaliation.

### 2. Ethnic Discrimination

In employment discrimination cases, the Court applies the three-step analysis framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff must make a *prima facie* case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment decision. *Id.* Finally, the burden shifts back to the plaintiff to show that the

employer's proffered explanation is merely a pretext for a discriminatory motive. *Id.* at 804.

A plaintiff can make out a *prima facie* case of ethnic discrimination by showing that: "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 604 (9th Cir. 2004). "[A]n adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (citations omitted). The Ninth Circuit has repeatedly emphasized that a plaintiff's burden in establishing a *prima facie* case of discrimination is "minimal." *Coghlan v. American Seafoods Co. LLC.*, 413 F.3d 1090, 1094 (9th Cir. 2005).

### A. Adverse Action for Time Sheet Falsification

Lamboy contends that he was given an Adverse Action for the FLSA timesheet falsification because of ethnic discrimination. As an initial inquiry, the Court must determine whether Lamboy is barred from litigating this claim by the settlement agreement he entered into with the CDCR. Public policy favors the release of Title VII claims through settlement agreements. *Stroman v. W. Coast Grocery Co.*, 884 F.2d 458, 460-61 (9th Cir. 1989). "The determination of whether a waiver of Title VII was voluntary, deliberate, and informed is predicated upon an evaluation of several indicia arising from the circumstances and conditions under which the release was executed." *Id.* at 462 (citations omitted). The Court must look to factors such as the clarity and lack of ambiguity in the agreement, the education level and experience of the plaintiff, whether the plaintiff is represented by counsel, and any other indicia of a coercive atmosphere. *Id.*

Here, Lamboy agreed to "release, acquit and forever discharge the State of California Department of Corrections and Rehabilitation . . . of and from any and all demands, actions, causes of action, claims of any kind or nature whatsoever," including claims under "Title VII of the 1964 Civil Rights Act" that arise from that Adverse Action. CDCR Req., Exh. C. Administrative Law Judge Purdy found that the parties entered into the agreement voluntarily and with the advice of counsel. *Id.*

9

Lamboy contends that he was coerced into accepting the settlement because the alternative penalty was losing his job with the CDCR. However, the Ninth Circuit and the Supreme Court have long found that a harsh penalty alone does not make a settlement or plea agreement coercive. *See Brady v. United States*, 397 U.S. 742 (1970) (finding a guilty plea not coercive even though the defendant was otherwise threatened with a potential death sentence). Lamboy's argument that his agreement was involuntary because he faced a threat of termination finds no support in our jurisprudence. Thus, because the Court finds that a valid settlement agreement bars Lamboy from litigating the timesheet falsification Adverse Action, it GRANTS defendants' motion for summary judgment as to this claim.

### B.   Adverse Action for Misuse of Family Crisis Leave

Lamboy contends that he was given an Adverse Action for the misuse of Family Crisis Leave because of ethnic discrimination. As an initial matter, the Court must first determine whether Lamboy is barred from litigating his claim regarding the Family Crisis Leave Adverse Action by the settlement agreement he entered into with the CDCR. Lamboy does not dispute that the settlement was voluntary, deliberate, and informed. Instead, he argues that the agreement is voided because the CDCR did not uphold its end of the agreement. Under the terms of the settlement, the CDCR agreed that "[t]he Letter of Reprimand, and all supporting material, and this Stipulation will be removed from Appellant's Official Personnel File (OPF) upon approval of this Settlement Agreement by the SPB." CDCR Req., Exh. E. The CDCR also agreed that Lamboy "shall receive back pay without interest." *Id.*

A settlement waiving the plaintiff's rights under Title VII is governed by federal law. *Stroman*, 884 F.2d at 461. It may be interpreted and enforced under general contract law principles. *See Santobello v. New York*, 404 U.S. 257, 262 (1971) (finding that the government's breach of its promise in a plea bargain could void the agreement); *Buckley v. Terhune*, 441 F.3d 688, 694 (9th Cir. 2006).

Here, Lamboy states that he did not receive any back pay. He also states that the CDCR failed to remove the material from his personnel file when the settlement was approved. The CDCR does not offer evidence to the contrary. As required for summary judgment, the Court must accept the plaintiff's facts as true. Therefore, the Court cannot find that Lamboy is barred from litigating his claim regarding

10

the Family Crisis Leave Adverse Action.

Next, the Court must turn to the first step under the *McDonnell Douglas* framework, and determine whether Lamboy can make a *prima facie* case of employment discrimination. First, as a Hispanic, he is a member of a protected class. Second, Lamboy is qualified for his position through training and experience. Third, the discipline resulting from the Adverse Action was a letter of reprimand. The Ninth Circuit has found that a warning letter or negative review can be considered an adverse employment action. *Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840, 847 (9th Cir. 2004) (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987)). Finally, the circumstances give rise to an inference of discrimination because Fox made a derogatory statement to Lamboy regarding his Hispanic ethnicity, and Fox was the officer who requested the investigation. *See Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148-49 (9th Cir. 1997) (manager's comment that co-worker was a "dumb Mexican" could be evidence of discrimination against plaintiff and satisfied *prima facie* case).

The CDCR then has the burden to show that it had a legitimate reason for the Adverse Action. Here, it is undisputed that Lamboy did not have prior authorization for at least one day that he used the Family Crisis Leave. Under the Family Crisis Leave policy, he was required to submit documentation for that day, which he failed to do. Thus, the CDCR had a legitimate, non-discriminatory reason for the Adverse Action for failure to follow the Family Crisis Leave policy.

If the employer sustains its burden, the presumption of discrimination disappears, and the plaintiff must show that the proffered reasons are pretexts for discrimination. *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 356 (2000). "Although a plaintiff may rely on circumstantial evidence to show pretext, such evidence must be both specific and substantial." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002). Here, Lamboy offers no specific or substantial evidence to show that the CDCR's reasons for the Adverse Action were merely a pretext for ethnic discrimination. Therefore, because the Court finds there is no genuine issue of material fact that the CDCR did not issue the Family Crisis Leave Adverse Action  because Lamboy is Hispanic, it GRANTS the defendants' motion for summary judgment as to this claim.

### C. Adverse Action for Use of Excessive Force

Lamboy contends that in the Adverse Action concerning use of excessive force, he was punished more harshly than others because of ethnic discrimination. Lamboy can make out a *prima facie* case for discrimination for the excessive force adverse action because he is Hispanic, qualified for his position, and his salary was reduced by 5% over 12 months. Additionally, the circumstances give rise to an inference of discrimination because the two white officers involved in the incident were punished less harshly than Lamboy.

The CDCR explains that Lamboy is not similarly situated to Lee and Zipperlen. It punished Lamboy more harshly than the Lee because Lee ordered Lamboy to hold the inmate by the shoulders, not the ankles, and because Lee did not participate in the act of dragging the inmate. It also explains that Lamboy was the instigator, and it was only at Lamboy's order that Zipperlen dragged the inmate by the ankles. Finally, both Lee and Zipperlen reached settlement agreements in the course of which their sentences were reduced, while Lamboy did not settle with the CDCR.

Lamboy asserts that he was actually the subordinate officer of the three. However, his failure to dispute that Lee ordered him to grab the inmate by the shoulders, or that he ordered Zipperlen to drag the inmate by the ankles, belies the argument that the three were similarly situated. Lamboy also asserts that the CDCR failed to make any settlement offers to him. Although the CDCR disputes this, it does not offer any evidence that Lamboy was given a settlement offer besides a declaration. Thus, Court must accept Lamboy's assertion as true. Because this is an issue of material fact, the Court DENIES the defendants' motion for summary judgment as to this claim.

### D. Job Change to a Different Unit

Lamboy contends that in October 2007, Captain Fox transferred him from the Adjustment Center to a different unit because of ethnic discrimination. To make a *prima facie* case for employment discrimination, Lamboy must first show that this was an adverse employment action. The Ninth Circuit has noted that "[n]ot every employment decision amounts to an adverse employment action." *Strother v. Southern Cal. Permanente Med. Group*, 79 F.3d 859, 869 (9th Cir.1996) (finding that an employee who was excluded from meetings, seminars and positions that would have made her eligible for salary

12

increases, denied secretarial support, and given a more burdensome work schedule suffered from adverse employment actions). The Ninth Circuit has taken an expansive view of the type of actions that can be considered adverse employment actions, including disadvantageous transfers or assignments. *Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000). Although Lamboy's transfer to a different unit did not affect his pay, benefits, or rank, he alleges that it negatively impacted his schedule. Accepting this as true, a negative schedule change resulting from the unit change could be an adverse employment action.

Lamboy must next show that the context of his unit change creates an inference of discrimination. Lamboy first does so by pointing to the discriminatory comment that Fox made ten months prior to the unit change, that Lamboy was the only Mexican from Chino that hadn't been locked up. Lamboy also suggests discrimination because a majority of the officers transferred were Hispanic, Indian, or African-American.

The CDCR then has the burden to show that it had a legitimate reason for the transfers. Fox explained that the Adjustment Center was a volatile unit, and he transferred out officers that had Adverse Actions for use of excessive force, which Lamboy had received in June 2007. Furthermore, the fact that Fox replaced Lamboy with an African-American officer, and that two white officers were also transferred, tends to dispel the inference of discrimination.

The burden then returns to Lamboy to prove that these reasons are merely a pretext for ethnic discrimination. Lamboy has alleged no facts that dispute the legitimacy of Fox's alleged reasons for the transfer. To show pretext, Lamboy must put forward specific and substantial evidence challenging the credibility of the CDCR's motives. Therefore, because the Court finds no genuine issue of material fact that the CDCR's reason for the unit change was not a pretext for ethnic discrimination, it GRANTS the defendants' motion for summary judgment as to this claim.

### E. Denial of Promotion to Lieutenant in July 2008

Lamboy contends that in July 2008, he was denied a promotion to lieutenant because of ethnic discrimination. He makes a *prima facie* case for discrimination because as a Hispanic he is a member of a protected class, he is qualified for his position, and a denial of a promotion is an adverse

employment action. *See Ray*, 217 F.3d at 1241 (failure to promote is an adverse employment action). Additionally, he raises of inference of ethnic discrimination because Fox and Cota were the interviewers for the promotion, and Fox had previously made a discriminatory comment to Lamboy regarding his Mexican ethnicity.

The CDCR explains that its non-discriminatory reason for failing to promote Lamboy to the lieutenant position was because he performed more poorly on the verbal and written portions of the interview than other candidates. Fox's recollection and Cota's notes from the interview process explain that Lamboy's writing was "not thorough" and his responses were "fair to minimal." That Cota is himself Hispanic also further dispels the inference of ethnic discrimination.

Lamboy's only evidence suggesting that Cota's notes were pretextual is that Cota was an adjudicator during a hearing on his FLSA time sheet falsification Adverse Action, and thus was prejudiced against him. But being prejudiced against an employee for being disciplined is not protected, and may be a legitimate reason for denying a promotion. Lamboy has failed to put forward any other specific evidence challenging the credibility of the CDCR's motives for failing to promote him. Therefore, because the Court finds no genuine issue of material fact that the CDCR's reason for the denial of promotion was a pretext for ethnic discrimination, it GRANTS the defendants' motion for summary judgment as to this claim.

### F. Other Incidents

Lamboy fails to make a *prima facie* claim of discrimination for the other alleged instances of discrimination by the CDCR. First, he fails to allege any facts that would give rise to an inference of discrimination for why he was removed from participating in the Crisis Response Team. Indeed, he does not dispute the explanation that he was unable to attend because he had a pending investigation for use of excessive force.

Second, regarding the negative rumors about him, the Ninth Circuit has found that statements of coworkers cannot constitute adverse actions. *Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000) ("Because an employer cannot force employees to socialize with one another, ostracism suffered at the hands of coworkers cannot constitute an adverse employment action.") Thus, these

rumors cannot be the basis for a *prima facie* case of discrimination because they are not an adverse employment action.

Third, Lamboy offers no evidence that his file was not timely purged of material because of employment discrimination. Lamboy has failed to make a *prima facie* case that the materials were not purged because of employment discrimination.

### 3.     Retaliation

In retaliation cases, the plaintiff first bears the burden of establishing a *prima facie* case. *Villiarimo*, 281 F.3d at 1064. To make out a *prima facie* case of retaliation, the plaintiff must show: (1) involvement in a protected activity; (2) an adverse employment action taken against him; and (3) a causal link between the two. *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006).

For the first element, a plaintiff need only show that the plaintiff opposed his employer's practices "based on a *reasonable belief* that the employer has engaged in an unlawful employment practice." *Id.* (quoting *Moyo v. Gomez,* 40 F.3d 982, 984 (9th Cir.1994)) (emphasis in original). Complaining about an employee's discriminatory practices or filing a complaint with the EEOC is a protected activity. *Ray*, 217 F.3d at 1240 n.3. An adverse employment action is an action that is reasonably likely to deter the plaintiff from engaging in a protected activity. *Id.* at 1242-43. In order to show a causal link for the third element, the plaintiff need only establish knowledge by the employer and a temporal proximity to make a *prima facie* case. *See Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003); *Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1112 (2007).

Once the plaintiff makes a *prima facie* case for retaliation, the burden shifts to the defendant to provide a legitimate, non-retaliatory reason for the adverse employment action. *See McDonnell Douglas Corp.*, 411 U.S. at 802. If the employer meets its burden, then the burden returns to the plaintiff to establish that the reason was pretextual. *Id.* The plaintiff must show by a preponderance of the evidence that, but for his engaging in the protected activity, the adverse employment action would not have occurred. *Villiarimo*, 281 F.3d at 1064-65.

### A. Adverse Action for Use of Excessive Force

Lamboy contends that he received an Adverse Action for use of excessive force in retaliation for his EEOC complaint and his appeals of his previous Adverse Actions. The EEOC complaint is a protected activity, and the appeal of the prior Adverse Actions is also likely a protected activity because the appeal procedure is protected by Lamboy's due process rights. The action was adverse because Lamboy suffered a salary reduction. Additionally, Lamboy can likely show that there is a causal connection based on the temporal proximity of events. The CDCR received notice of the EEOC investigation on May 14, 2008 or June 8, 2008, and Lamboy received the Notice of Adverse Action for excessive force on September 1, 2008.

Assuming that Lamboy has made a *prima facie* case for a retaliation claim, the CDCR has shown that it had a legitimate reason for filing the use of excessive force Adverse Action against Lamboy, because he dragged an inmate by the ankles across the ground for 20-30 feet.

Because the CDCR has shown that it had a non-retaliatory reason for issuing the excessive force Adverse Action, the burden shifts to Lamboy to show that these reasons are merely a pretext for retaliation. However, Lamboy has failed to allege any specific or substantial facts that would show that the CDCR's explanations are pretextual. Therefore, because the Court finds there is no genuine issue of material fact that the CDCR did not issue the excessive force Adverse Action in retaliation for Lamboy's appeals or EEOC complaint, it GRANTS the defendants' motion for summary judgment as to this claim.

### B. Adverse Action for Failure to Comply with the Program Status Report

Lamboy contends that he received an Adverse Action for failure to comply with the Program Status Report in retaliation for his the EEOC complaint and filing this suit. The EEOC complaint and subsequent suit are protected activities. Although Lamboy was eventually reimbursed for the payment decrease from the Adverse Action, a delay of payment and a negative personnel filing is reasonably likely to deter employees from engaging in protected activity. *See Ray*, 217 F.3d at 1241-42. Lamboy argues that he can make a *prima facie* case for causation based on the timing of events. Lamboy was served the Notice of Adverse Action for the failure to comply with the PSR on September 21, 2011, only

16

five days after the CDCR was served the summons and complaint in this suit.

Assuming that Lamboy has made a *prima facie* case, the CDCR explained that the reason it filed an Adverse Action against Lamboy was not in retaliation for the instant suit, but because he authorized the release of two inmate workers when it was forbidden by the PSR, and this resulted in the attack of an inmate and a guard.

Lamboy fails to allege any specific evidence showing that this reason was pretextual. Indeed, he admitted that he authorized the release of the inmate in violation of the PSR. Additionally, Lamboy does not rebut evidence that the CDCR began its investigation of the PSR Adverse Action before it was served with the complaint in this action. Therefore, because the Court finds there is no genuine issue of material fact that the CDCR did not issue the PSR Adverse Action in retaliation for the EEOC complaint, it GRANTS the defendants' motion for summary judgment as to this claim.

### C.     Failure to Reimburse Lamboy for Family Crisis Leave Settlement

Lamboy also alleges that the CDCR failed to reimburse him for his salary reduction as required by the Family Crisis Leave Adverse Action settlement in retaliation for the EEOC complaint and instant action. The first two elements of a *prima facie* case of retaliation are met: the EEOC complaint is a protected activity, and a salary reduction that is not reimbursed is an adverse employment action. Lamboy argues that the third causation element is met based on the proximity in time of events. The CDCR and Lamboy settled the Family Crisis Leave Adverse Action in September 2011, and the CDCR was served the summons and complaint that same month. This creates an inference of retaliation.

The CDCR has failed to offer a legitimate, non-retaliatory explanation for its failure to reimburse Lamboy as required by the settlement agreement. Therefore, because the Court finds there is a genuine issue of material fact of whether the CDCR did not reimburse Lamboy in retaliation for the EEOC complaint and subsequent suit, it DENIES the defendants' motion for summary judgment as to this claim.

///

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART and DENIES IN PART defendants' motion for summary judgment (Docket No. 38).

**IT IS SO ORDERED.**

Dated: October 19, 2012

SUSAN ILLSTON
United States District Judge